UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:16CR144(RNC) |
| | : | |
| v. | : | |
| | : | |
| ADAM BOGUSKI | : | April 27, 2017 |

**GOVERNMENT'S MEMORANDUM IN RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The government respectfully submits this memorandum in response to the sentencing memorandum of Defendant Adam Boguski [doc. 32]. On August 8, 2016, the defendant pleaded guilty to one count of conspiracy to take, capture, and kill red-tailed hawks (*Buteo jamaicensis*) and Cooper's hawks (*Accipiter cooperii*) in violation of 18 U.S.C. § 371 and the Migratory Bird Treaty Act ("MBTA") at 16 U.S.C. §§ 703 and 707(a) *et seq*.; and two substantive counts of taking, capturing, and killing Cooper's hawks in violation of the MBTA. These violations are Class B misdemeanors and carry for each count a statutory maximum of six months of incarceration, a $15,000 fine, and a $10 special assessment; the maximum penalty is 18 months of imprisonment, a $45,000 fine, and a $30 special assessment.

The evidence demonstrates that the defendant and his co-conspirator, Thomas Kapusta, were collectively responsible for killing 11 protected hawks, at least six of which were captured and killed by Kapusta himself. On October 19, 2016, the Court sentenced Kapusta, the more culpable co-conspirator, to one year of probation, a $5,500 fine and 90 hours of community service. Kapusta had pleaded guilty to the same § 371 conspiracy count and four substantive counts of killing protected hawks in violation of the MBTA.

The defendant is responsible for committing essentially the same criminal violations. Unlike Kapusta, however, the instant defendant provided truthful statements about his involvement in killing hawks when interviewed by law enforcement, and then proceeded to assist the

government with its investigation. Accordingly, the government respectfully submits that a sentence of probation with an appropriate fine and community service would achieve just punishment, deter the defendant from re-offending, and deter others from engaging in similar violations of the MBTA.

## I. THE OFFENSE CONDUCT

### A. Background

The MBTA, 16 U.S.C. § 703 *et seq*., provides in relevant part that it is unlawful at any time, by any means or in any manner, to take or kill, or to attempt to take or kill, any migratory bird. The MBTA provides protection for migratory birds through international cooperation and treaties, but allows for the hunting of certain migratory game birds within certain seasons and under specific regulations. The MBTA, however, prohibits pursuing, hunting, taking, possessing, capturing, or killing any non-game migratory bird, or attempting to pursue, hunt, take, possess, capture, or kill any non-game migratory bird, or any part, nest, or egg of any such bird unless authorized by permit. These rules maintain an equitable balance between protection and preservation of migratory birds, and recreational opportunities afforded by hunting. PSR ¶ 6.

The MBTA is the primary federal law protecting native migratory birds, whether a hummingbird or a bald eagle, from unfettered hunting and killing. As the Supreme Court found in upholding the statute's constitutionality, the MBTA involves "a national interest of very nearly the first magnitude" to protect the nation's avian wildlife because, "but for the treaty and statute[,] there soon might be no birds for any powers to deal with." *Missouri v. Holland*, 252 U.S. 416, 435 (1920).

The Cooper's hawk (*Accipiter cooperii*) and red-tailed hawk (*Buteo jamaicensis*) are non-game migratory birds, as defined in Title 50 Code of Federal Regulations (CFR), Sections 10.12 and 10.13, and are protected under the MBTA. Any person engaged in taking, possessing, or

transporting migratory birds for depredation control purposes, is required to first obtain a Depredation Permit as required by the MBTA, and Title 50, Code of Federal Regulations, Parts 13.1, 21.11, and 21.41(a). PSR ¶¶ 6, 7.

A Swedish goshawk trap ("goshawk trap") is a trap that captures hawks and other birds of prey with great efficacy. It is a box-shaped structure constructed of wire mesh and wood that is approximately three-feet long, three-feet wide, and four-feet high. At its top, the goshawk trap has two hinged doors that open outward. A wooden bar with a middle hinge lies between the two doors, keeping the trap open and functioning as a trigger mechanism. Live pigeons are placed in a separate wire-mesh compartment below the trap's wire-mesh floor to act as live bait to attract birds of prey. When a bird of prey enters the trap and flies down toward the live bait, its body makes contact with the hinged bar. This contact causes the hinged bar to collapse, thereby shutting the top doors and trapping the bird of prey inside. The goshawk trap is placed in an open, unobstructed area that is clearly visible to raptors flying above. If the trap is concealed or obstructed, the hawk cannot view the live bait and will not fly into the trap. PSR ¶ 8.

**B. <u>330 Weed Avenue, Stamford, Connecticut</u>**

The defendant was a regular visitor to the residence and property at 330 Weed Avenue, Stamford, Connecticut, where Kapusta's mother resided. The residence is situated close to the street on a long, narrow rectangular lot that runs to the water line of Holly Pond, a public body of water connected to Long Island Sound. Holly Pond is surrounded by numerous residences and is used by the public for boating, fishing, and other recreational activities.

**C. <u>The Defendant's Capturing and Killing of Protected Hawks With Kapusta</u>**

The defendant is a lifetime racing pigeon enthusiast. Kapusta and he are (or have been) members of the Greenwich and Stamford Pigeon Racing Clubs. Kapusta and the defendant built and maintained a large pigeon coop in the backyard abutting Holly Pond at 330 Weed Avenue to

keep their racing pigeons. In this coop (pictured below), they kept, fed, and raised up to 100 (or more) racing pigeons. They regularly released the pigeons, so they could fly and exercise before returning to the coop. They would also race their pigeons in competitions, which involved releasing them at locations outside of Stamford; the pigeons used their natural homing instincts to fly back to the coop at 330 Weed Avenue. PSR ¶ 11.



Even though Kapusta and the defendant knew that raptors consumed pigeons as part of their natural diet, they viewed the hawks as a threat. To that end, they captured and killed many hawks at 330 Weed Avenue near the Holly Pond waterline using a Swedish goshawk trap. They obtained, set up, and maintained a goshawk trap in close proximity to the pigeon coop and Holly Pond to capture and kill hawks.[1] During certain seasons, they adjusted the goshawk trap, and watered and fed the live pigeons in the bait compartment, on a daily basis. After a hawk was captured in the goshawk trap, Kapusta and the defendant used a Gamo Big Cat .177 caliber air rifle with attached Gamo Sporter Scope, Serial Number 04-1C-206950-08, to shoot and kill it at close range while the raptor was still in the trap. They would shoot the hawks multiple times to kill

[1] The goshawk trap appears in the left foreground of the photograph above.

them, and then remove and dispose of the carcasses. In addition, Kapusta told the defendant that they should refer to the goshawk trap as a "breeding cage" if third parties, including law enforcement, ever inquired about it. PSR ¶ 12.

The investigation revealed that Kapusta and/or the defendant captured and/or killed protected raptors in the goshawk trap at 330 Weed Avenue on the following dates:

- On or about December 1, 2014, Kapusta captured and killed an unknown species of raptor in the goshawk trap at 330 Weed Avenue.

- On or about March 17, 2015, a Cooper's hawk was captured.

- On or about May 3, 2015, a Cooper's hawk was captured (see below).



- On or about September 2, 2015, Kapusta captured, shot, and killed a Cooper's hawk.

- On the evening of September 6, 2015, law enforcement recovered a Cooper's hawk carcass wrapped in a yellow "Shop Rite" plastic grocery bag from Kapusta's municipal trash container that had been left in Weed Avenue. A necropsy of the hawk carcass performed by the National Fish and Wildlife Forensic Lab confirmed that it had been killed by shooting.

- On or about September 8, 2015, Kapusta captured, shot, and killed a red-tailed hawk.

- On or about September 24, 2015, Boguski captured, shot, and killed a Cooper's hawk.

- On or about September 27, 2015, Boguski captured, shot, and killed a Cooper's hawk.

- On or about October 14, 2015, Kapusta captured, shot, and killed a Cooper's hawk.

- Later that same day, Kapusta captured, shot, killed, and disposed of a red-tailed hawk.

- On or about October 17, 2015, Boguski captured, shot, and killed a Cooper's hawk, whose carcass he removed from the goshawk trap (see below).



- On or about October 21, 2015, Kapusta captured, shot, and killed a Cooper's hawk.

PSR ¶ 13.

A search warrant executed at the backyard of 330 Weed Avenue on October 27, 2015, yielded, among other things, a Gamo Big Cat .177 caliber air rifle with scope was located in a hidden compartment in the pigeon loft along with ammunition. PSR ¶ 14. Kapusta made several false statements to law enforcement when he was interviewed. In contrast, the defendant stated, among other things, that (1) he and Kapusta were racing pigeon enthusiasts; (2) they raised

and kept many racing pigeons since building the pigeon coop at 330 Weed Avenue; (3) they viewed hawks as a threat to their pigeons; (4) they obtained, set up, and used the goshawk trap to capture and kill hawks; and (5) Kapusta told the defendant that if third parties were to inquire about the goshawk trap, they were to say it was a "breeding cage." PSR ¶ 15.

## II. The Plea Agreement

On August 8, 2016, the defendant pleaded guilty to one count of conspiracy to take, capture, and kill red-tailed hawks and Cooper's hawks in violation of 18 U.S.C. § 371 and the MBTA at 16 U.S.C. §§ 703 and 707(a); and two counts of taking, capturing, and killing Cooper's hawks on September 27, 2015 and October 17, 2015. These violations carry a statutory maximum of six months of incarceration and a $15,000 fine for each count; the maximum penalty is eighteen months of imprisonment and a $45,000 fine. As part of the plea agreement, the defendant has waived all interest in the Gamo Big Cat. 177 caliber air rifle, the related ammunition, and the goshawk trap.

## III. Discussion

### A. 18 U.S.C. § 3553(a)

Title 18, United States Code, Section 3553(a) provides, in pertinent part:

> (a) Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed–
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> ***
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and
>
> (7) the need to provide restitution to any victims of the offense.

**B. <u>The Court's Sentence Should Address the Defendant's Role in Capturing and Killing Federally Protected Hawks</u>**

The defendant's actions were not only illegal, but also deprived his fellow citizens of their collective right to enjoy a public wildlife resource.

**1. <u>The Nature and Circumstances of the Offense</u>**

The defendant's capturing and killing of federally protected hawks was an intentional and callous crime. In committing this crime multiple times, the defendant essentially punished the hawks for following their natural instinct to hunt and consume smaller birds. By cramming up to 100 racing pigeons in a coop and by regularly releasing them, Kapusta and the defendant attracted raptors to the backyard at 330 Weed Avenue. Their actions made it inevitable that the hawks would act on natural predatory instincts to pursue the pigeons as a food source.

Next, the defendant did not adequately understand the crucial role that these raptors play in the ecosystem as apex predators atop the avian food chain. The red-tailed hawk is a physically impressive bird, with a four-foot wingspan and distinctive call, which can dive at more than 100 miles per hour. *See* Letter of Ms. Jenny Dickson, CWB, Supervising Wildlife Biologist, Connecticut Department of Energy and Environmental Protection, Wildlife Division, dated August 30, 2016 ["Dickson Letter"] at 1 at Exhibit A. Moreover, "[m]ale and female red-tailed hawks mate for life and share incubation of the eggs." *Id*. Their diet, which includes rats and mice,

contributes to vermin control. *Id.* Consequently, "the loss of a single individual [hawk] represents many years of lost reproductive potential which when combined with other natural mortality factors, can ultimately have negative impacts on bird populations." *Id.* at 2.

Similarly, the smaller Cooper's hawk is an equally impressive raptor with "the skill of an aerial acrobat to hunt prey, primarily other birds." *Id.* This species was in steady decline from the early 1930s through the 1970s due to DDT, which "caused egg-shell thinning making the eggs too weak to survive incubation." *Id.* As a result, the Cooper's hawk was once listed as a species of special concern under the Connecticut Endangered Species Act in 1993; it was subsequently de-listed in the late 1990s when populations began to stabilize. *Id.*; *see also* https://www.ct.gov/deep/cwp/view.asp?A=2723&Q=325986&pp=12&n=1 (noting the Cooper's hawk recent prior status as a "threatened species") at Exhibit B.[2] A Cooper's hawk relies on its keen hunting ability because it must consume 12 percent of its body weight daily. In fact, "[e]ven with abundant food and ideal parental care, mortality rates for juvenile raptors range between 70 and 80 percent." *Id.* at 2.

The defendant's violations of the MBTA deprived his fellow citizens of their right to enjoy the red-tailed and Cooper's hawks as a public wildlife resource. As Wildlife Biologist Dickson points out, these raptors are "valued by residents who enjoy watching them in their neighborhoods and green spaces . . . [with] Connecticut ha[ving] some of the most avid birdwatchers in the country." *Id.* Birds of prey, such as the red-tailed and Cooper's hawk, are highly sought by birders, so that the collective "national economic impact of bird watching is tremendous." *Id.*

[2] The Court should not be persuaded by the defendant's citation to the "International Union for Conservation of Nature and Natural Resources" ("IUCN") to suggest that his crime is less egregious because IUCN, a private organization, does not consider red-tailed and Cooper's hawks to be an endangered species. Def. Mem. at 3. Both species are protected under the MBTA. Furthermore, the IUCN purports to assess only the worldwide, not the domestic, vitality of bird species.

In short, the government respectfully submits that the defendant's criminal conduct was wrongful and intentional. His sentence should reflect that he was involved in the illegal killing of protected raptors without regard for his fellow citizens' collective right to enjoy them as a public wildlife resource.

**2. <u>The Defendant's History and Characteristics and His Assistance With the Government's Investigation</u>**

The government recognizes that the defendant has a strong work history and does not have any criminal convictions. As noted earlier, the defendant provided truthful information to law enforcement that assisted the government in this investigation. The government respectfully submits that the Court's sentence should reflect these facts.

**3. <u>The Sentence Must Promote General Deterrence and Respect for the Law</u>**

The killing of protected hawks has long been the disturbing secret of racing pigeon enthusiasts who view raptors as a danger to their prized racing pigeons. Unfortunately, the illegal killing of raptors is not uncommon among racing pigeon hobbyists, whose pigeons can be valued and sold for hundreds, if not thousands, of dollars. The Court's sentence should deter the illegal capture and killing of hawks, promote respect for wildlife law, and show the public that the criminal justice system will seriously treat such wildlife crimes. *See* 18 U.S.C. § 3553(a)(2)(B) (stating that the Court must consider the need for the sentence to "afford adequate deterrence to criminal conduct").

**4. <u>A Fine Commensurate With the Fine Imposed on Defendant Kapusta Would Be Appropriate</u>**

The government respectfully proposes that the Court, as it did with Defendant Kapusta, base its fine on the "Schedule for Forfeiture of Collateral for the Fish and Wildlife Service," which was previously issued by the Court in his capacity as Chief Judge for the District of Connecticut on November 18, 2005. *See* Exhibit C, Order Regarding Schedule for Forfeiture of Collateral,

signed by Chief Judge Robert N. Chatigny on November 18, 2005 ("Schedule"). This Schedule gives Fish and Wildlife Service ("FWS") officers the ability to issue a fine in the field for misdemeanor or petty offenses without the commencement of formal criminal charges. Additional fine amounts are subject to the officer's discretion. The Schedule defines "value" as the "current established replacement value for animals or plants, which are listed in Appendix A of this schedule." *Id*. at 4.[3]

For MBTA taking violations under section 703, the base fine for illegal capturing or killing is $500 plus the value assigned to the specific bird species. *Id.* at 10. According to Appendix A, hawks and owls are valued at $500. *Id*. at 24. Thus, the fine for the illegal killing of *each* hawk would be $500 or $1,000. The Court previously imposed a fine of $5,500 on Kapusta. If the Court finds that the defendant can pay a fine, the government respectfully submits that the Court should impose a similar fine on the defendant to be made payable to the "North American Wetlands Conservation Fund Account," as authorized by16 U.S.C. § 4406(b) and 50 C.F.R. §§ 20 and 21.

**5. <u>The Court Should Impose the Same Special Conditions That Were Imposed on Kapusta</u>**

Finally, if the defendant is involved in raising and racing pigeons in any way, the government proposes that the Court impose the same special conditions imposed on Defendant Kapusta in the judgment:

> The defendant's pigeon-related activities will be restricted as follows: (a) the defendant may release pigeons from a pigeon coop only for routine exercise; (b) the defendant may not transport pigeons except for veterinary purposes; (c) the defendant may not engage in pigeon racing; (d) the defendant may not breed pigeons or acquire new pigeons; (e) the defendant may not engage in a transaction relating to his pigeons that produces a financial benefit to him; and (f) the defendant's pigeon coop will be subject to random, periodic inspections.

[3] These page numbers correspond to the CM/ECF page numbers for clarity.

## CONCLUSION

In sum, the government respectfully submits that the Court should impose a sentence of probation, a significant fine, a period of community service, and $30 in special assessments.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

*/s/ Harold H. Chen*

HAROLD H. CHEN
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT24432
1000 LAFAYETTE BLVD., 10th FLOOR
BRIDGEPORT, CONNECTICUT 06604
(203) 696-3000

## CERTIFICATE OF SERVICE

This is to certify that on April 27, 2017, a copy of foregoing Government's Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Harold H. Chen

HAROLD H. CHEN
ASSISTANT UNITED STATES ATTORNEY